This is USA v. Limberatos Good afternoon, Your Honors. May it please the Court, my name is Karloff Cummings-Young and I represent the appellant Mr. Nicholas Limberatos. This is a motion to reverse the District Court's termination of bail in this case. We'll start with this, Your Honors, Mr. Limberatos is not a risk of flight. There's a wealth of information provided in case law reflecting what flight is. Mr. Limberatos never made false representations to the Court. He never disregarded Court orders. He never misrepresented his birthplace or citizenship. He never used aliases. He has strong ties, family ties, to the United States, specifically in the New York area, including his minor children, siblings, nieces, nephews, home, and businesses. Mr. Limberatos, contrary to what the government attempted to represent in its papers, did not travel abroad frequently. Specifically, he's traveled to Greece seven times in the 44 years that he's been in this country. That contradicts the wealth of cases showing that frequent travel outside of the United States, frequent international travel, is significantly more than seven times in 44 years. Even if Mr. Limberatos is considered a risk of flight, there are a set of conditions  that the Court already set. They're listed in my papers, and I'd note that those conditions assured Mr. Limberatos' return to court twice, including on a Thursday and a Friday before the district court for the initial bail hearing, and then a second time when the district court remanded Mr. Limberatos. The Court failed to seek alternate conditions, including exploring additional shirters, alternate properties, exploring the adding of a waiver of extradition, as courts have done in United States v. Bodmer, C3, CRIM 947, or United States v. Seng, 15 CRIM 706. And I think most egregiously, the district court used his family ties against him in this case. The district court stated, in part, his length of residence and strong family ties to the United States, notwithstanding, these are strong incentives to flee, to circumvent the proceedings in this Court, especially since he has numerous other family members here who could provide a support network for his immediate family. Your Honors, the district court literally used a factor that's supposed to go in favor of being released on bail. They used it, the district court used it as a factor in favor of detention. That goes in contravention of the bail statute, contravention of congressional intent. Just two other things I'd like to mention to the Court. The government in its papers referred to substantial resources, and again, the frequent travel. Substantial resources in the cases, in many of the cases that the government cited in its papers to this Court and its papers before the district court, those defendants had millions of dollars. Mr. Limberato's had $60,000, which he honestly reported to pretrial services in an account. Those $60,000, that $60,000 has been depleted since his arrest in this case. $60,000 does not represent a substantial amount of resources. This is exaggeration on the part of the government, and it should not be taken, it should not be used as a factor in this case, Your Honor, unless the Court is saying that the minimal amount of money that Mr., or resources that Mr. Limberato's has, shows that he does not have enough resources to flee, as the government states. I'll note that this Court in Freedman acknowledged that the government used the strength of the case, the nature of the charge, public scorn, and the public concern, and the fact that the defendant in Freedman worked in the United States, specifically the New York area, for 25 years, and had three children in the New York area, were factors that went against a risk of flight in that case, Your Honors. Thank you. May it please the Court, my name is Sam Rothschild, I'm an assistant United States attorney in the Southern District of New York, and I represent the United States in this appeal and in the court below. The Court should affirm Judge Swain's detention order, because she did not. Judge Swain ruled one way, and Judge Swain ruled the other way, is that right? That's correct, Your Honor. I would note that all the evidence that Judge Swain had before her when she made her ruling was not in front of Magistrate Judge Wang, including the returns from the search warrant that was executed at the defendant's residence on the day of arrest. We believe the detention order should be affirmed here. Judge Swain did not clearly err by concluding that the government showed, by a preponderance of the evidence, both that the defendant presents a serious risk of flight, and that no combination of conditions could reasonably assure his appearance. This Court reviews detention decisions for clear error, because those decisions depend largely on the district court's predicate findings, and because determining the weight to be accorded each factor under 18 U.S.C. 3142 is the special province of the trier of fact. As the Court knows as a deferential standard, the Court reverses only if it has a definite and firm conviction that a mistake has been made. Here, Judge Swain made no mistake. She properly considered the relevant statutory factors, all of which point in the same direction. Would you say to counsel's argument that you have used a factor which the statute intends as favoring grant of release to disfavor grant of release? And counsel argues that that was in violation of the congressional purpose. Your Honor, Judge Swain did not use the defendant's community ties as a factor in favor of release. Rather, and in fact, we know that Judge Swain understood perfectly well that community ties counsel against detention, because as defense counsel quoted in the passage he read, she said, his ties to New York or his family ties notwithstanding, he has strong incentive to flee. So she understood which side of the balance those fall on. She pointed to the extended family in the area simply to turn back the defendant's argument that she had miscalculated his incentives. One of the defendant's arguments was that I actually don't have a strong incentive to flee because I need to care for my children who are here in New York. And it was... I don't think that a court were to reason or we in this very appeal were to reason that the presence in the United States of family ties could be relied on by the defendant to go to Greece because he could remain assured that his family ties in the U.S. would take care of his dependents. Would it be illegal to do that? So the statute sets out the factors that the court should consider and the court should consider those factors in total in assessing particular defendant's incentives to flee. So in many cases it might well be that the presence of extended family provides a reason to stay, but given the facts of this case, without in any way violating the statute, the calculus I think works out the other way. I'll just quickly talk about the factors. How long has he now been in detention? Since October 10th, Your Honor. And how long do you think he'll remain in detention until the beginning of the trial? I apologize, Your Honor. The defense counsel has helpfully corrected me. He's been in custody since October 25th. He was arrested on October 10th. Your Honor, as for when a trial might occur in this case, no trial date has yet been set. We are in the process of producing discovery in this case. The next date in front of Judge Swain is late April. It's difficult for me to say at this time when. So he will have been detained for about six months, possibly longer. That's a form of punishment, really. Your Honor, I note that the defendant faces aggravated identity theft charges, which, as Your Honor know, carry a two-year mandatory consecutive sentence to anything that he would receive on the other charges. And the government is very confident that the defendant will be convicted in this case. There's overwhelming evidence against him, including wiretap recordings, recording surveillance footage, and fruits and instrumentalities of ATM skimming, which were recovered at his home. And I guess I'll end on that point, Your Honor. The essence of this case is ATM skimming, which is fundamentally a crime that involves identity theft. The defense counsel noted that this particular defendant has not used aliases, but he's been a leading figure in an ATM skimming conspiracy ring that has no compunction about stealing victims' personal identifying information, which makes him a potential suspect. And the defense counsel noted that the defendant has not used aliases, but he's been a leading figure in an ATM skimming conspiracy ring that has no compunction about stealing victims' personal identifying information, which makes him a potential suspect. He is not a citizen of Greece, right? He is a citizen. He is a citizen of Greece. Yes, Your Honor. Yes, Your Honor. And that was ‑‑ defense counsel didn't raise that here today, but that was another factor that Judge Swain considered in her analysis, which was that if he flees to Greece, which seems the likely candidate of where he would end up, he could not be extradited from Greece. How long ‑‑ I gather he was ‑‑ until October, he spent a certain amount of time out on bail, is that right? That's correct. It was about two weeks. Two weeks? That's correct. And did anything happen during those two weeks which would have given anyone cause for concern? Not that I'm aware of, Your Honor. I would note that, as I think the government mentioned in some of its papers below, the ‑‑ typically when defendants do flee, it's not right away. It tends to happen as something of consequence, like a plea or a sentence approaches. So give us the timeline just a moment. So on a certain date, he's detained and he is granted bail by Judge Wang, is that right? That's correct. He was detained on October 10th and granted bail that day by Judge Wang. So he's out, and then when did you decide that you would appeal this decision to the district judge? We submitted our appeal on October 15th, so five days later. We appealed the bail not only of this defendant, but two other defendants as well. So you were appealing the original decision to begin with, and in the normal course, you were appealing to Judge Swain. And you had ‑‑ gave her additional material that had not been before? That's exactly right, Your Honor. When the presentment in front of Judge Wang was underway, the search of the defendant's house had not yet concluded. Within that very small time period? Correct, Your Honor, correct. By the time we put in our papers in front of Judge Swain on the 15th, we included photographs of additional items that had been seized from the defendant's home, including what's called a deep insert ATM skimmer device that actually goes all the way inside of the ATM and is capable of imaging the victim's cards. Thank you. Thank you very much, Your Honor. Just a brief rebuttal. I just want to address a couple of points, Your Honors. First, some of the evidence ‑‑ so on the date that Mr. Limberatos was arrested, there was a search that took place of Mr. Limberatos' home, allegedly, and the government stated that they allegedly found implements of the crime. That was stated before Judge Wang. The government produced pictures of what they believe were items connected to the crime. I believe there were three pictures they produced before Judge Wang, maybe a total, I want to say, of five pictures before Judge Swain. So it's not accurate that Judge Wang was not aware of the search that was conducted and that there were items that were allegedly taken that were supposed to be in connection with the crime. When the government states that people tend to flee after pleas, there are no statistics that back that up, Your Honors. And the cases that the government cited with respect to that before Judge Swain on October 24th at the bail hearing, those cases were primarily drug cases. And for the most part, defendants in drug cases tend to flee far more often than defendants in theft or fraud cases. How do we know that? Those were, I believe I cited it in my papers, I think 78 percent. There was a study done by the administrative office of the courts with respect to that, Your Honor. Thanks very much, Mr. Comision. Thank you, Your Honor. Rule reserve decision.